[Cite as *Marshall v. Snider-Blake Business Serv., Inc.*, 2022-Ohio-1869.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Stephanie Marshall, | : | |
| Plaintiff-Appellant, | : | No. 21AP-700 |
| | | (C.P.C. No. 20CV-7723) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Snider-Blake Business Service, Inc., | : | |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on June 2, 2022

**On brief:** *Stephanie Marshall*, pro se. **Argued:** *Stephanie Marshall*.

**On brief:** *Kovach Law Firm, LLC,* and *Thomas G. Kovach*, for appellee. **Argued:** *Thomas G. Kovach*.

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, P.J.

{¶ 1} Plaintiff-appellant, Stephanie Marshall, pro se, appeals from a decision and judgment entry of the Franklin County Court of Common Pleas entering judgment in favor of defendant-appellee, Snider-Blake Business Service, Inc. on Marshall's claims of willful nonpayment and breach of contract. For the following reasons, we affirm.

## I. Facts and Procedural History

{¶ 2} On December 1, 2020, Marshall filed a complaint against Snider-Blake asserting claims of willful nonpayment and breach of contract.[1] Snider-Blake is a temporary staffing agency. The allegations in the complaint related to the timing of Snider-

---

[1] Marshall subsequently filed an amended complaint on February 9, 2021 to correct Snider-Blake's mailing address.

Blake's payment to Marshall for her work at Big Lots on November 21, 2020, for which Snider-Blake placed Marshall. More specifically, Marshall alleged that, pursuant to the terms of her agreement with Snider-Blake, she should have been paid for her November 21, 2020 work on Friday, November 27, 2020 but was not actually paid until Monday, November 30, 2020. Marshall alleged the untimely payment was a breach of the contract she had with Snider-Blake and sought $250,000 in damages.

{¶ 3}    Snider-Blake responded with a motion to dismiss for lack of jurisdiction, arguing Marshall could not possibly recover $500, and thus her claim could only be brought in municipal court. The trial court denied Snider-Blake's motion to dismiss in an April 28, 2021 decision and entry, noting that it was required to base its jurisdictional determination on the amount sought in the complaint, not on the probability of obtaining the requested amount.

{¶ 4}    The matter then proceeded to a bench trial on November 30, 2021. At trial, Marshall testified that when she worked for Snider-Blake and was placed at Big Lots, she should have received a paycheck on Friday, November 27, 2020. The expected paycheck related to work Marshall did at Big Lots on behalf of Snider-Blake on Saturday, November 21, 2020. Marshall testified that she received her paycheck three days later, on Monday, November 30, 2020, but that the delay in payment time was stressful. After the delay in payment, Marshall said she stopped working for Snider-Blake.

{¶ 5}    Marshall also filed as exhibits her email correspondence with Snider-Blake inquiring about the late payment and information obtained from Snider-Blake's website indicating payroll occurs on a weekly basis unless there is a holiday. Friday November 27, 2020 was the day after Thanksgiving.

{¶ 6}    Robert McCabe, the president of Snider-Blake, also testified at trial. McCabe testified clients that use the temporary staffing agency email Snider-Blake every week with the number of hours that an associate works, then Snider-Blake enters the hours into its local system and generates both a paycheck and an invoice. If a client fails to send all of an employee's hours, Snider-Blake will reach out to the client to obtain a record of the hours worked. In such a delay, Snider-Blake issues the corrected payment immediately rather than waiting for the next payroll period.

{¶ 7}    McCabe further testified that Snider-Blake's employee regulations, to which Marshall agreed and signed her name, specifically states that an employee "understand[s] that [it] is my responsibility to have my supervisor sign and verify the hours on my time sheet each week." (Tr. at 26.)  Thus, if the client fails to supply the record of hours worked, McCabe explained it is for the employee to keep track of the hours he or she works.  The employment application further states "[i]f I encounter a payroll error or delay in receiving my pay, I will notify Snider-Blake within seven days of the week in which the payroll error occurred."  (Tr. at 26.)  McCabe testified that if there is a discrepancy in hours worked versus hours paid, Snider-Blake strives to correct the discrepancy as quickly as possible. McCabe additionally identified a paycheck issued to Marshall on November 30, 2020 for 12 hours of work completed on November 21, 2020.

{¶ 8}    McCabe further testified that while the Snider-Blake office is typically open the day after Thanksgiving, the office closes at 3:00 p.m. that day.  Records of voicemails indicated that Marshall called the Snider-Blake office on Friday, November 27, 2020 at 4:46 p.m. and left a voicemail indicating she had not been paid.  Marshall left another message at Snider-Blake on Saturday, November 28, 2020 at 10:24 a.m. and a third message on Sunday, November 29, 2020 at 9:53 a.m.

{¶ 9}    In an email dated Sunday, November 29, 2020, Marshall's supervisor at Big Lots wrote to Snider-Blake that Marshall went to Big Lots to report that she had not been paid for her November 21, 2020 work.  Through this email, the Big Lots supervisor stated he could not find any confirmation that he had reported Marshall's work from November 21, 2020 to Snider-Blake but that he was now confirming, through the November 29, 2020 email, that Marshall had worked those hours, and the supervisor included a completed timecard for Marshall.  The Snider-Blake employee responded at 8:22 p.m. on Sunday, November 29, 2020, writing "[w]e did not have an email for [November 21, 2020], but I will get her paid out tomorrow by the end of the day.  Thank you for last week's time card." (Tr. at 32.)  McCabe testified Marshall was then paid the very next day, Monday, November 30, 2020, for those hours.

{¶ 10} Following the trial, the trial court issued a December 1, 2021 decision and judgment entry rendering judgment in favor of Snider-Blake on all of Marshall's claims. Marshall timely appeals.

## II. Assignment of Error

{¶ 11} Marshall assigns the following error for our review:

> Abuse of discretion of the Judge.

## III. Discussion

{¶ 12} In her sole assignment of error, Marshall asserts the trial court abused its discretion in entering judgment in favor of Snider-Blake. Though she phrases her assignment of error as implicating an abuse of discretion, the substance of Marshall's argument is that the trial court made factual findings that were against the manifest weight of the evidence and that the trial court did not properly apply the pertinent law.

{¶ 13} In a civil case, a reviewing court will not reverse the judgment as being against the manifest weight of the evidence when some competent, credible evidence supports all the essential elements of the case. *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 280 (1978). In determining whether a civil judgment is against the manifest weight of the evidence, an appellate court is guided by the presumption that the findings of the trial court are correct. *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Id.* Additionally, where an appeal from a bench trial presents a question of law, we review such questions de novo. *Coomer v. Opportunities for Ohioans with Disabilities*, 10th Dist. No. 21AP-158, 2022-Ohio-387, ¶ 13.

{¶ 14} Marshall's complaint asserted claims for breach of contract and willful nonpayment. We address each of these claims separately.

### A. Breach of Contract

{¶ 15} Marshall argues the trial court erred when it concluded Snider-Blake did not breach its employment contract with her when it paid her three days later than she anticipated. To succeed on a claim of breach of contract, a plaintiff must demonstrate (1) the existence of a genuine contract, (2) plaintiff's performance, (3) defendant's breach, and (4) damages or loss to the plaintiff. *Thyssen Krupp Elevator Corp. v. Constr. Plus, Inc.*, 10th Dist. No. 09AP-788, 2010-Ohio-1649, ¶ 13, citing *Jarupan v. Hanna*, 173 Ohio App.3d 284, 2007-Ohio-5081, ¶ 18 (10th Dist.).

{¶ 16} The parties agree Marshall had a contract of employment with Snider-Blake. The issue at trial was whether Marshall demonstrated a breach of that contract when Snider-Blake paid her for her November 21, 2020 work at Big Lots. The pertinent contract language is found in Snider-Blake's Rules and Regulations of employment and provides:

> 8. I understand that the workweek at Snider-Blake runs from Monday through Sunday and that I must record all time worked and report my time to Snider-Blake by the following Tuesday. I understand that it is my responsibility to have my supervisor sign and verify the hours on my time sheet each week.

> 9. If I encounter a payroll error or a delay in receiving my pay, I will notify Snider-Blake within 7 days of the week in which the payroll error occurred.

(Def.'s Ex. A.)

{¶ 17} The evidence at trial indicated that Big Lots failed to properly document Marshall's hours worked and submit them to Snider-Blake in a timely fashion. When Marshall notified Snider-Blake of the error, Snider-Blake paid Marshall the day after it received the proper documentation from Big Lots in accordance with the employment Rules and Regulations. Thus, we agree with the trial court that Marshall did not demonstrate a breach of the contract.

{¶ 18} Moreover, Marshall did not present any evidence of damages that occurred as a result of the alleged breach. When asked at trial what damages she incurred, Marshall repeatedly stated that she was not paid on time. Essentially, Marshall attempted to point to what she deemed proof of the breach as necessarily demonstrating damages. However, as the evidence submitted at trial demonstrated that Marshall was paid, in accordance with the employment Rules and Regulations, the day after Big Lots provided Marshall's completed timecard to Snider-Blake, Marshall's claim lacks merit. Moreover, though Marshall sought punitive damages for the allegedly untimely payment, we are mindful that "[p]unitive damages are not recoverable in an action for breach of contract." *Lucarell v. Nationwide Mut. Ins. Co.*, 152 Ohio St.3d 453, 2018-Ohio-15, paragraph one of the syllabus.

{¶ 19} Therefore, the manifest weight of the evidence supports the finding that Marshall did not demonstrate that Snider-Blake breached its contract with Marshall.

## B. Willful Nonpayment

{¶ 20} The remaining claim in Marshall's complaint is one she deems willful nonpayment. Through her appellate brief, Marshall does not articulate an argument specific to a claim of willful nonpayment. Instead, she argues the trial court erred in failing to find that Snider-Blake violated 41 U.S.C. 6503, Section 1-308 of the Uniform Commercial Code ("UCC"), the Contract Clause of the United States Constitution, and/or the Fair Labor Standards Act ("FLSA").

{¶ 21} We agree with the trial court that 41 U.S.C. 6503 is not applicable to Marshall's claim. 41 U.S.C. 6503 relates to public contracts with the federal government. As Snider-Blake is not a government agency, 41 U.S.C. 6503 does not apply.

{¶ 22} We additionally agree with the trial court that the Contract Clause of the United States Constitution is inapplicable to this matter. Article I, Section 10, Clause I of the United States Constitution provides "[n]o State shall * * * pass any * * * Law impairing the Obligation of Contracts" and relates to the encroachment of a state upon contracts. *See, e.g., Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, ¶ 9 ("the United States Constitution specifically protects against state encroachment upon contracts"). As this case does not implicate an act of the state impacting the contract between Marshall and Snider-Blake, the Contract Clause of the United States Constitution does not apply.

{¶ 23} To the extent Marshall asserts the trial court should have found Snider-Blake's conduct to be a violation of UCC 1-308, we agree with the trial court that UCC 1-308 does not apply to this matter as the case does not involve a commercial transaction. *See, e.g., Northeast Ohio College of Massotherapy v. Burek*, 144 Ohio App.3d 196, 202 (7th Dist.2001), fn. 6 (Ohio's version of the UCC applies to "commercial transactions, not employment contracts.").

{¶ 24} Lastly, though Marshall now argues the trial court erred in failing to find Snider-Blake's conduct was a violation of the FLSA, we note that Marshall's complaint did not assert a claim for an FLSA violation. *See* Civ.R. 8(A) ("[a] pleading that sets forth a claim for relief * * * shall contain (1) a short and plain statement of the claim showing that the party is entitled to relief, and (2) a demand for judgment for the relief to which the party claims to be entitled"). Moreover, Marshall's entire argument related to the FLSA is that Snider-Blake failed to promptly pay her. However, as we explained in our resolution of

Marshall's breach of contract claim, the evidence at trial demonstrated that Snider-Blake paid her the day after receiving Marshall's completed timecard from Big Lots. Marshall points to no authority indicating the timing of her payment from Snider-Blake violates any portion of the FLSA.

**{¶ 25}** Accordingly, the manifest weight of the evidence supports the trial court's decision, and the trial court did not err in entering judgment in favor of Snider-Blake on all of Marshall's claims. We overrule Marshall's sole assignment of error.

## IV. Disposition

**{¶ 26}** Based on the foregoing reasons, the trial court did not err in entering judgment in favor of Snider-Blake on Marshall's claims of breach of contract and willful nonpayment. Having overruled Marshall's sole assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

DORRIAN and MᶜGRATH, JJ., concur.

_____